JOHNSON & WEAVER, LLP
Frank J. Johnson (CA 174882)
Shawn E. Fields (CA 255267)
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Lead Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MANNKIND CORPORATION DERIVATIVE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS. | Lead Case No. 11-cv-05003-GAF-SSx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date: November 19, 2012<br>Time: 9:30 a.m.<br>Department: 740<br>Judge: Hon. Gary A. Feess<br><br>Action Filed: August 12, 2011 |

# TABLE OF CONTENTS

<u>Page</u>

I.      INTRODUCTION.........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................3

     A.      Proceedings in the Federal Action ...................................................3

     B.      Proceedings In The State Action.......................................................4

     C.      Settlement Efforts ............................................................................5

     D.      Preliminary Approval and Notice to Shareholders.........................6

III.    BENEFITS OF THE PROPOSED SETTLEMENT ................................7

     A.      Rigorous Oversight Procedures for Disclosure Committee ...........7

     B.      Stronger Policies Governing Audit Committee Review and
             Legal and Regulatory Risk Disclosure ...........................................8

     C.      Enhanced Board Standing and Independence.................................9

IV.     THE STANDARDS FOR JUDICIAL APPROVAL OF
       DERIVATIVE SETTLEMENTS...........................................................10

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL....................11

     A.      The Settlement Was Negotiated At Arm's-Length ......................11

     B.      The Settlement is Fair, Reasonable, and Adequate ......................13

          1.      The Strength of Plaintiffs' Case ...........................................13

          2.      The Risks, Expense, Complexity, and Likely Duration
                of Further Litigation .............................................................15

          3.      The Risk of Maintaining Class Action Status
                Throughout the Trial.............................................................16

          4.      The Amount Offered in the Settlement ...............................17

          5.      The Extent of Discovery and Stage of the Proceedings ......17

ii

6.    The Experience and Views of Counsel ................................ 19

7.    The Presence of a Government Participant ........................ 20

8.    The Reaction of MannKind Shareholders ........................... 20

VI.    THE NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE AND SHOULD BE APPROVED ..................... 20

    A.    Courts Favor a Negotiated Resolution of Fee Issues .................... 20

    B.    The Substantial Benefits Conferred Upon MannKind Support the Fee and Expense Amount ........................................................ 22

    C.    The Fee and Expense Amount Compares Favorably to Fees in Settlements of Similar Actions ...................................................... 24

VII.    THE INCENTIVE AWARDS SHOULD BE APPROVED ................... 25

VIII.    CONCLUSION ........................................................................................ 25

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

Lead Case No. 11-cv-05003-GAF-SSx

# TABLE OF AUTHORITIES

<u>Page</u>

**CASES**

*Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989)...................................................... 21

*Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43 (2008) .......................................... 19

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo 2005) ..................... 15, 16, 21, 23

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)...................................... 12

*Denney v. Jenkens & Gilchrist,* 2005 WL 388562 (S.D.N.Y. Feb. 18, 2005)........................................................................................................... 25

*Durkin v. Shea & Gold*, 92 F.3d 1510 (9th Cir. 1996)......................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................ 11, 20

*Hensley v Eckerhart* 461 U.S. 424 (1983)........................................................... 20

*In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ............................................................................ 11

*In re Apple Computer, Inc. Derivative Litigation*, 2008 WL 4820784 (N.D. Cal. 2008)......................................................................................... 20

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992).................................... 22

*In re Dun & Broadstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ...................................................................................... 25

*In re Emerging Commc'ns S'holders Litig.*, 2004 WL 1305745 (Del. Ch. May 3, 2004) ............................................................................................ 15

*In re GNC S'holder Litig.*, 668 F.Supp. 450 (W.D. Pa. 1987)............................ 25

*In re Imperial Corp. of Am.*, 92 F.3d 1503 (9th Cir. 1996)................................. 11

*In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................ 18

iv

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................................................................ 11, 17, 23

*In re Pac. Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995) .......................... passim

*In re Pfizer Inc., S'holder Derivative Litig.,* 780 F. Supp. 2d 336 (S.D.N.Y. 2011) .................................................................................. 17

*In re Rambus, Inc. Derivative Litig.*, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ........................................................................................... 20

*In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412208, 2008 WL 185809 (D.N.J. Jan. 14, 2008) .................................. 23

*In re Sequenom, Inc. Derivative Litig.*, Case No. 09-CV-1404-LAB-WMC, slip op. (S.D. Cal. Jul. 27, 2010) ...................................... 24

*In re THQ, Inc. Derivative Litig.*, No. BC357600, slip op. (Cal. Super. Ct. Feb. 25, 2009) ......................................................................... 25

*In re Wireless Facilities, Inc. Derivative Litig.*, Case No. 04-CV-1663-JAH-NLS, slip op. (S.D. Cal. Mar. 30, 2010) ............................. 24

*In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 14, 1992) .............................................................................. 10

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .................................. 10, 20

*Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375 (1970) ........................................ 22, 23

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ..................................................................... passim

*Prod. Res. Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772 (Del. Ch. 2004) ........................................................................................... 14

*Sved v. Chadwick*, 783 F. Supp. 2d 851 (N.D. Tex. 2009) ............................... 18

*Travis v. Mittelstaedt,* No. 2:06-cv-02341, slip op. (E.D. Cal. July 16, 2009) ........................................................................................... 24

*Unite Nat'l Ret. Fund v. Watts*, 2005 WL 28778995 (D.N.J. Oct. 28, 2005) ........................................................................................... 23

v

*United States v. McInnes*, 556 F.2d 436 (9th Cir. 1977) ...................................... 10

**STATUTES**

Fed. R. Civ. P. 23.1 ............................................................................ 10

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT

Lead Case No. 11-cv-05003-GAF-SSx

## I.      INTRODUCTION

Plaintiff Donald Talley ("Federal Plaintiff") hereby seeks final approval of the settlement of the above-captioned shareholder derivative action on the terms set forth in the August 3, 2012, Stipulation of Settlement ("Stipulation") filed with this Court on August 10, 2012.  Upon Court approval, the Settlement[1] will fully, finally, and forever resolve the derivative claims that are the subject of this Federal Action, as well as the claims asserted in the related State Action.[2]

The Settlement is the product of extensive, arm's-length negotiations among Federal Plaintiff, State Plaintiffs, the Individual Defendants, and nominal defendant MannKind Corporation ("MannKind" or the "Company"), with the substantial assistance of an experienced mediator, the Honorable Layn R. Phillips (Ret.) ("Judge Phillips").  Pursuant to the terms of the Settlement, MannKind has agreed to implement significant Corporate Governance Reforms designed to strengthen the Company's internal controls with regard to public disclosures, to improve the function of MannKind's Audit Committee, and to enhance the independence and accountability of the Board of Directors ("Board").  *See* Stipulation at §2.1 & Ex. A.

In the face of numerous procedural, legal, factual, and practical hurdles, Plaintiffs' Counsel were able to secure Defendants' agreement to implement and

---

[1] Unless otherwise noted, all capitalized terms shall have the same definition as set forth in the Stipulation.

[2] *See In re MannKind Corp. Derivative S'holder. Litig.*, Lead Case No. BC454931 (Cal. Super. Ct. – Cnty. Of L.A. filed Feb. 10, 2011).  The State Plaintiffs fully support the Settlement.  *See* Declaration of State Derivative Plaintiff C. Kent Stephens in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Stephens Decl.") at ¶2; Declaration of Plaintiff Ira J. Gaines of Behalf of Sunshine Wire and Cable Defined Benefit Plan Trust Dated January 1, 1992, in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Gaines Decl.") at ¶2.

1

maintain the Corporate Governance Reforms at MannKind for a period of no less than four years. *Id.*[3] Defendants acknowledge that these Reforms are significant and extensive and confer substantial benefits upon MannKind and its shareholders. *Id.* at §2.1. In addition, Defendants acknowledge that Plaintiffs' actions were the sole factor in Defendants' decision to agree to enact these Reforms. *Id.*; Johnson Decl. at ¶8.

After reaching agreement on the substantive terms of the Settlement, the Settling Parties engaged in extensive arm's-length negotiations, again with the assistance of Judge Phillips, to negotiate fair and reasonable compensation for Plaintiffs' Counsel's efforts in securing the benefits of the Settlement for MannKind. As part of the Settlement, the Settling Parties agreed that MannKind will issue 225,000 shares of unrestricted MannKind common stock and cause its insurers to pay $800,000 to compensate Plaintiffs' Counsel for their fees and litigation expenses (the "Fee and Expense Amount").[4] Stipulation at §4.1.

Following this Court's preliminary approval of the Settlement in September 12, 2012, the Settling Parties published the Notice of Settlement pursuant the Stipulation and this Court's order. The deadline to object to the proposed Settlement has passed, and not a single MannKind shareholder has objected. This universal shareholder support confirms the views of the Settling Parties, their respective experienced counsel, and Judge Phillips that the Settlement is an outstanding resolution of this complex, high-risk litigation.

---

[3] *See also* Declaration of Frank J. Johnson in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Johnson Decl.") at ¶8.

[4] This agreement was substantially facilitated by Judge Phillips, who recommended the Fee and Expense Amount to the parties via a "mediator's proposal" that he believed was "a fair and reasonable amount to compensate" Plaintiffs' Counsel. Phillips Decl. at ¶C, 2.

2

1   Accordingly, Federal Plaintiff respectfully requests that the Court grant final

2   approval of the Settlement and enter the [Proposed] Order and Final Judgment.

3   **II.     FACTUAL AND PROCEDURAL BACKGROUND**

4          **A.     Proceedings in the Federal Action**

5          On June 13, 2011, Federal Plaintiff filed his shareholder derivative

6   complaint in this Court on behalf of MannKind and against the Individual

7   Defendants for alleged violations of state law, including breach of fiduciary duty

8   and insider selling and misappropriation of information.[5]   On June 17, 2011,

9   plaintiff Savario Cimini filed a second shareholder derivative complaint in this

10  Court asserting substantively similar allegations.[6]

11         On July 14, 2011, this Court consolidated *Talley* and *Cimini* into the

12  above-captioned Federal Action, and appointed Johnson & Weaver, LLP as Lead

13  Counsel in the Federal Action.  On August 12, 2011, Federal Plaintiff filed his

14  Verified Consolidated Derivative Complaint ("Consolidated Complaint"),

15  asserting additional claims for violations of Cal. Corp. Code §§ 25402 and

16  25403, waste of corporate assets, and unjust enrichment.  On September 26,

17  2011, Defendants filed a motion to dismiss the Consolidated Complaint.

18         On October 21, 2011, the parties agreed to stay the Federal Action pending

19  resolution of the motion to dismiss in  the related Securities Class Action also

20  pending in this Court.[7]  On October 28, 2011, this Court entered an order staying

21  the Federal Action until the defendants' motion to dismiss and related motions in

22  the Securities Class Action were resolved.

23

24

25  [5] *Talley v. Mann, et al.*, 11-cv-05003-SVW-FMOx ("*Talley*").

26  [6] *Cimini v. Mann, et al.*, 11-cv-05120-MRP-PLA ("*Cimini*").

27  [7] *See In re MannKind Corp. Securities Litigation*, No. 11-cv-0929-GAF (SSx).

28                                         3

1    On December 16, 2011, this Court denied the defendants' motion to
2    dismiss the Securities Class Action.  As a result, and in accordance with this
3    Court's January 20, 2012 order, briefing in the Federal Action resumed.  Federal
4    Plaintiff filed an opposition to Defendants' motion to dismiss the Consolidated
5    Complaint on February 6, 2012, and Defendants filed their reply on February 13,
6    2012.  On February 14, 2012, the Court granted Defendants' motion to dismiss,
7    but with leave to amend.  On March 2, 2012, Federal Plaintiff served Defendants
8    with and filed his First Amended Verified Consolidated Derivative Complaint
9    ("Amended Complaint"), which was file stamped on March 5, 2012.

10   **B.    Proceedings In The State Action[8]**

11   On February 10, 2011, plaintiff C. Kent Stephens filed his shareholder
12   derivative complaint in the Superior Court of the State of California, County of
13   Los Angeles (the "State Court") on behalf of MannKind and against the
14   Individual Defendants for alleged breach of fiduciary duty, waste of corporate
15   assets, and unjust enrichment.[9]  Smith Decl. at ¶7.  On March 14, 2011, plaintiffs
16   Sunshine Wire and Cable Defined Benefit Pension Plan Trust and Ira Gaines
17   filed a substantially similar shareholder derivative complaint in State Court.[10]  *Id.*

18   On April 11, 2011, the State Court entered an order consolidating *Stephens*
19   and *Sunshine Wire* in an action captioned *In re MannKind Corp. Derivative*
20   *S'holder Litig.*, Lead Case No. BC454931 (Cal. Super. Ct. – Cnty. of L.A. filed

21   _____

22   [8]  The detailed procedural history of the State Action is provided in the
23   Declaration of Craig W. Smith in Support of Plaintiff's Unopposed Motion for
     Final Approval of Settlement ("Smith Decl.") at ¶¶7-20.

24   [9]  *Stephens v. Mann, et al.*, Case No. BC454931 (L.A. Super. Ct. 2011)
25   ("*Stephens*").

26   [10]  *Sunshine Wire and Cable Defined Benefit Pension Plan Trust, et al. v. Mann,*
27   *et al.*, Case No. BC457289 (L.A. Super. Ct. 2011) ("*Sunshine Wire*").

28

4

Feb. 10, 2011) (the "State Action").  *Id.*  On November 9, 2011, the State Court entered an order appointing Robbins Umeda, LLP and the Grant Law Firm, PLLC as Co-Lead Counsel for State Plaintiffs.  *Id.* at ¶10.

The State Action parties agreed to defer all proceedings pending this Court's anticipated ruling on the motion to dismiss in the Securities Class Action, and to share discovery generated in the Securities Class Action, if any, with State Plaintiffs.  *Id.* at ¶11.  On October 31, 2011, the State Court entered an order consistent with this stipulated agreement.  *Id.*   Following this Court's denial of the motion to dismiss the Securities Class Action, the State Action parties stipulated, and the State Court entered an order on March 5, 2012, to continue the stay in the State Action until September 5, 2012.  *Id.* at ¶12.

### C.   Settlement Efforts

On March 3, 2012, Defendants proposed and the Settling Parties agreed to participate in a mediation with Judge Phillips on April 30, 2012.  On March 9, 2012, this Court entered an order on the Federal Action parties' stipulation to stay the Federal Action pending the mediation.  Johnson Decl. at ¶¶35-37.

On April 20, 2012, Federal Plaintiff sent Defendants his settlement demand, which described a proposed structure for resolving the Actions.  On April 26, 2012, the State Plaintiffs sent Defendants their settlement demand outlining a similar framework.  Then, on April 30, 2012, the parties to the Federal Action, the Securities Class Action, and the State Action participated in an all-day, in-person mediation session with Judge Phillips.  The parties made substantial progress at the mediation, but were unable to achieve a resolution of the State Action and Federal Action at that time.  *Id.* at ¶38-40.

Over the next three months, the parties continued negotiations with the assistance of Judge Phillips.  During this time, the Settling Parties were able to reach agreement on all substantive terms of the Settlement, including the

1   Corporate Governance Reforms.  However, despite numerous attempts, the
2   Settling Parties could not reach agreement on their own on the issue of attorneys'
3   fees.  In an attempt to break the impasse, Judge Phillips crafted a mediator's
4   proposal recommending payment of the Fee and Expense Amount.  After careful
5   consideration, all parties independently accepted the proposal. *Id.* at ¶¶41-43.

6        On July 2, 2012, after extensive, arm's-length negotiations, substantially
7   facilitated by Judge Phillips, the Settling Parties reached an agreement-in-
8   principle to resolve the Actions upon the terms and subject to the conditions in
9   set forth the Stipulation.  On August 3, 2012, the Settling Parties finalized and
10  executed the Stipulation, which was filed with this Court on August 10, 2012.

11  **D.   Preliminary Approval and Notice to Shareholders**

12       On September 12, 2012, this Court entered the Preliminary Approval
13  Order preliminarily approving the Settlement and the form and manner of Notice
14  proposed in the Settlement.  The Court also scheduled a final settlement hearing
15  for November 19, 2012 (the "Settlement Hearing"), and set an October 29, 2012,
16  deadline for any MannKind shareholder to object to the proposed Settlement.

17       Pursuant to the terms of the Preliminary Approval Order, MannKind
18  posted a copy of the Notice and Proposed Settlement on its website on
19  September 18, 2012, and filed a Form 8-K with the SEC on September 18, 2012.
20  *See* Declaration of Peter M. Adams Regarding Publication of Notice of Proposed
21  Settlement and Hearing ("Adams Decl.") at ¶4.[11]  The Notice contained detailed
22  descriptions of the history of the Actions and proposed Settlement, the claims
23  that will be released if the proposed Settlement is approved, the Fee and Expense
24  Amount sought by Plaintiffs' Counsel, and the deadline to object to the proposed

25  ────────────────────

26  [11] The Notices posted and filed by MannKind originally listed an incorrect date
    for the Settlement Hearing, which MannKind corrected on October 22, 2012.
27  Adams Decl. at ¶8.

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S                    Lead Case No. 11-cv-05003-GAF-SSx
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT

1  Settlement.  The Notice was also posted on the respective websites of Johnson &
2  Weaver, LLP, Robbins Umeda, LLP, and the Grant Law Firm, PLLC on
3  September 19-20, 2012.  Johnson Decl. at ¶51.

4      Pursuant to the Preliminary Approval Order, the Notice directed that any
5  objections to the Settlement be filed by October 29, 2012.  The deadline has
6  passed, and Plaintiffs' Counsel are aware of no objections.  *Id.* at ¶54.

7  **III.    BENEFITS OF THE PROPOSED SETTLEMENT**

8      The Settlement guarantees MannKind and its shareholders the benefit of
9  comprehensive, detailed, and lasting corporate governance and oversight
10 procedures.  The Corporate Governance Reforms, which MannKind has agreed
11 to implement and maintain for no less than four years, will substantially improve
12 Board-level oversight of the Company's internal controls concerning public
13 statements and disclosures, and director independence guidelines.  *See* Johnson
14 Decl. at ¶55; Stipulation at Ex. A.  Moreover, the Corporate Governance
15 Reforms address the alleged wrongdoing and substantially reduce the probability
16 that MannKind will be damaged in the same or similar manner in the future.  *Id*.

17     Defendants acknowledge and agree that the Corporate Governance
18 Reforms are significant and extensive and confer substantial benefits upon
19 MannKind and its shareholders.  Stipulation at §2.1; *see also* Phillips Decl. at ¶B,
20 6 ("[T]he corporate governance reforms agreed upon here confer a substantial
21 benefit on the Company and its shareholders.").  Defendants also acknowledge
22 that the prosecution and settlement of the Actions was the sole factors in their
23 decisions to adopt and implement these corporate governance reforms.
24 Stipulation at §2.1.  The Corporate Governance Reforms are summarized below.

25     **A.    Rigorous Oversight Procedures for Disclosure Committee**
26     Following Court approval of the Settlement, MannKind will establish and
27 maintain a Board-level Disclosure Committee with the responsibility of ensuring

28

7

"that the Company's disclosures to its security holders and the public are accurate, complete and timely, and fairly present the Company's business, financial condition, and results of operation."   Stipulation at Ex. A.   The Disclosure Committee will meet a minimum of once per quarter and will be comprised of MannKind's most senior officers and directors, including the Chief Executive Officer, President, Chief Financial Officer, Chief Operating Officer, General Counsel, Chief Technical Officer, Senior Vice President of Regulatory Affairs, Vice President of Finance, and others as deemed appropriate.   *Id.*   The Settlement also sets forth detailed Disclosure Committee procedures, including scheduling, coordinating, and review procedures managed by a "Disclosure Reporter," as well as detailed responsibilities, including, *inter alia*, collecting and reviewing disclosure statements, evaluating disclosure controls, consulting with senior MannKind officers, meeting with the Company's independent registered public accounting firm, and conducting periodic self-assessments.   *Id.*

Importantly, the Settlement requires the Disclosure Committee to review (and where necessary, correct) not only public statements made in MannKind's Securities and Exchange Commission filings and press releases, but also "scripted and unscripted written and oral communications with analysts, investors and other external parties."   *Id.*   This and other requirements to be implemented as part of the Settlement are directly responsive to Plaintiffs' allegations regarding misleading oral statements made and/or not corrected by the Individual Defendants at numerous investors conferences between May 4, 2010, and January 12, 2011.   *See, e.g.*, Amended Complaint at ¶¶77-109.

**B.   Stronger Policies Governing Audit Committee Review and Legal and Regulatory Risk Disclosure**

As a result of the Settlement, MannKind will make and maintain substantial amendments to its Audit Committee Charter.   *See* Stipulation at Ex. A.   In particular, the Audit Committee Charter will be amended to require the

8

1   Audit Committee to approve the Disclosure Committee Charter, exercise

2   oversight of the work of the Disclosure Committee, and meet at least quarterly

3   with the chair of the Disclosure Committee to review disclosure concerns.  *Id.*

4   Moreover, the Settlement requires an Audit Committee resolution

5   acknowledging that:

6   the purpose of these amendments is to ensure that, among other
    things: (a) the Company uses effective methods to disclose FDA
7   communications concerning the Company's products, drug approval
    efforts, interactions and agreements with the FDA, and the status of
8   any drug applications in the Company's press releases and SEC
    filings; and (b) the entire Board is informed of all significant
9   communications with the FDA.

10  *Id.*  This requirement directly responds to Plaintiffs' allegations that the

11  Individual Defendants' misrepresented the status of MannKind's AFREZZA

12  approval efforts with the FDA.  *See, e.g.*, Amended Complaint at ¶¶75, 77-109.

13  **C.   Enhanced Board Standing and Independence**

14  In addition to strengthening MannKind's disclosure policies and

15  procedures, the Corporate Governance Reforms are also designed to strengthen

16  the independence of MannKind's Board.  *See* Stipulation at Ex. A.  For example,

17  the Company will implement policies requiring any director deemed

18  "independent" in any calendar year to satisfy nine new qualifications designed to

19  ensure that no conflicts of interest exist that would impair an independent

20  director's ability to exercise sound, independent judgment in the best interests of

21  the Company and its shareholders.  *Id.*  These policies also directly respond to

22  Plaintiffs' allegations that: 1) the Individual Defendants breached their fiduciary

23  duties of due care, loyalty, and good faith to the Company by making and/or

24  failing to correct the misleading statements about AFREZZA; and 2) the Director

25  Defendants possessed personal and professional conflicts preventing them from

26  independently evaluating a demand to bring litigation against any of the

27  Individual Defendants.  *See, e.g.*, Amended Complaint at ¶¶247-265.

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S                    Lead Case No. 11-cv-05003-GAF-SSx
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT

## IV. THE STANDARDS FOR JUDICIAL APPROVAL OF DERIVATIVE SETTLEMENTS

It is well-settled that compromises of disputed claims are favored by the courts. *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the law").[12]   Further, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'"   *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citation omitted); *see also In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502, at *3-*4 (N.D. Cal. July 14, 1992) ("The law favors settlement of cases and quieting of litigation, particularly in complex . . . derivative litigation.").

Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  While the district court must exercise "sound discretion" in evaluating a settlement, in exercising its discretion:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995) (upholding district court's determination that shareholder derivative settlement was "'fair, reasonable and adequate to [the company]'") (citation omitted).

In considering whether a proposed settlement of a complex shareholder class or derivative action is fair, reasonable, and adequate, "[t]he district court's

---

[12]  *See also United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("[T]there is an overriding public interest in settling and quieting litigation").

10

ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following":

    1.  The strength of plaintiffs' case;

    2.  The risk, expense, complexity, and likely duration of further litigation;

    3.  The risk of maintaining class action status throughout the trial;

    4.  The amount offered in the settlement;

    5.  The extent of discovery completed, and the stage of the proceedings;

    6.  The experience and views of counsel;

    7.  The presence of a government participant; and

    8.  The reaction of [shareholders] to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.[13]  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Id.*

## V.  THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Settlement Was Negotiated At Arm's-Length

    A strong presumption of fairness applies to settlements that have been negotiated at arm's-length by experienced counsel, and with the assistance of an independent mediator.  *See e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (A "'mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of

---

[13] While every factor may not be relevant in a given case, federal courts in this circuit have universally applied some combination of these factors in the context of shareholder derivative settlements.  *See, e.g., Pac. Enters.*, 47 F.3d at 377; *Durkin v. Shea & Gold*, 92 F.3d 1510, 1512 n.6 (9th Cir. 1996); *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 n.5 (9th Cir. 1996); *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, *3 (N.D. Cal. Dec. 22, 2008).  Here, factors (3) and (7) are not relevant to the Actions.

collusion and undue pressure.'") (citation omitted).  This presumption applies here because the Settlement is the product of arm's-length negotiations conducted by counsel knowledgeable in complex shareholder derivative litigation, and substantially facilitated by an experienced and independent mediator.

As an initial matter, counsel for all the parties are extremely experienced and skilled in shareholder derivative litigation.  *See* Phillips Decl. at ¶B, 3 (opining that "defendants are represented by one of the best corporate defense firms in the country," and that "plaintiffs are also represented by counsel that . . . I count among the finest shareholder rights advocates").  Moreover, all counsel possessed a firm understanding of the strengths and weaknesses of their respective claims and defenses.  In particular, Plaintiffs and Plaintiffs' Counsel have engaged in extensive investigation, motion practice, negotiation, and other litigation efforts throughout the prosecution of the Actions, and have accumulated sufficient information discovered through these efforts to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.  Johnson Decl. at ¶69.

During these negotiations, counsel for each party participated in an all-day, in-person mediation, where they displayed "vigorous and effective advocacy," and persuasively asserted "the[ir] respective positions."  Phillips Decl. at ¶B, 4.  Demonstrating the arm's-length nature of the negotiations, "the parties made substantial progress at the mediation session, but did not reach a final resolution."  *Id.*  In fact, following the mediation, the parties engaged in "approximately two months of continuing negotiations" facilitated by Judge Phillips.  *Id.* at ¶B, 5.  Although the parties eventually finalized agreement on the Corporate Governance Reforms, they remained unable to agree on an award of attorneys' fees and expenses.  Only after Judge Phillips crafted a mediator's proposal recommending the Fee and Expense Amount were the Settling Parties

12

able finally to reach an agreement-in-principle on July 2, 2012, helping the parties avoid costly and timely satellite litigation. *Id.*

This lengthy, hard-fought negotiation history demonstrates that the Settlement was the product of arm's-length negotiations. Judge Phillips confirms as much: "Based on my first-hand observations, I am pleased to represent to the Court that this Settlement was the product of hard-fought, arm's-length negotiations by skilled, experienced, and effective counsel for all parties." *Id.* at ¶D, 1. Therefore, the Settlement enjoys a presumption of fairness.

### B.    The Settlement is Fair, Reasonable, and Adequate

In addition to determining whether a proposed settlement is the product of arm's-length negotiations, courts must also determine whether the proposed settlement is fair, reasonable, and adequate. *Officers for Justice*, 688 F.2d at 625. As discussed herein, each of the relevant factors considered by courts in this circuit weighs strongly in favor of judicial approval of the Settlement.

### 1.    The Strength of Plaintiffs' Case

Courts often balance the strength of a plaintiff's case against the benefits of settlement in determining whether a proposed settlement is fair, reasonable, and adequate. *Officers for Justice*, 688 F.2d at 625. In the context of shareholder derivative litigation, even the strongest cases face an uphill battle due to myriad legal, procedural, and discovery protections afforded director and officer defendants. Indeed, the Ninth Circuit, in affirming a district court's approval of a derivative action settlement, noted that "the odds of winning [a] derivative lawsuit [are] extremely small" and that "derivative lawsuits are rarely successful." *Pac. Enters.,* 47 F.3d at 378. These Actions were no different.

While Plaintiffs continue to believe in the strength of their primary breach of fiduciary duty claims, they also recognize the considerable challenges they would face in establishing liability on these claims. For example, Defendants

13

1  likely will continue to argue that Plaintiffs must prove by a preponderance of

2  evidence that each of the Individual Defendants acted in bad faith, an

3  exceedingly difficult element to prove.  Johnson Decl. at ¶76.  Plaintiffs are also

4  mindful of the challenge of successfully pleading and proving demand futility,

5  especially in a case such as this where seven of MannKind's nine directors are

6  purportedly "outside" independent directors.  *Id.*

7       In addition, the Individual Defendants have asserted that they exercised

8  sound business judgment and acted in good faith at all times.  *See* Stipulation at

9  Section III.  If the parties continued with the litigation, the Individual Defendants

10  will likely continue to assert that their conduct was protected by the business

11  judgment rule, which creates the powerful presumption that the Board and

12  management acted in the best interests of the Company.  This presumption,

13  present in many derivative actions, would have been even harder to rebut here

14  because the issues involve, among other things, exceedingly complex matters of

15  regulatory law relating to the Company's duty to disclose FDA communications

16  concerning clinical trials and the utility of a novel pharmaceutical product.  The

17  prospect that the Individual Defendants could have been shielded by this

18  protective umbrella made establishing liability in the Actions uncertain.

19       Even assuming that liability could eventually be established, it is not clear

20  or certain what amount of damages or corporate governance reforms Plaintiffs

21  could recover on behalf of MannKind at trial.  Defendants will undoubtedly

22  argue that the directors are exculpated from liability by virtue of the exculpatory

23  clause in MannKind's Certificate of Incorporation, permissible under 8 Delaware

24  Code Annotated section 102(b)(7).  *See Prod. Res. Group, L.L.C. v. NCT Group,*

25  *Inc.,* 863 A.2d 772, 799 (Del. Ch. 2004).  Under traditional applications of

26  Delaware law, Plaintiffs faced a formidable challenge establishing and collecting

27  monetary damages in the Actions.  While MannKind may have suffered ***losses*** as

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT

Lead Case No. 11-cv-05003-GAF-SSx

a result of the conduct challenged in the Actions, the question of whether it suffered legal, non-exculpated ***damages*** is a much more complicated question.

Moreover, the issue of damages to MannKind would have been hotly disputed and clearly would have been the subject of expert testimony proffered by all parties.[14]   The damages assessments of experts retained by the parties would surely vary substantially and the assessment of this crucial element of Plaintiffs' claims would be reduced at trial to a "'battle of the experts.'"   *See, e.g., In re Emerging Commc'ns S'holders Litig.,* 2004 WL 1305745, at *11 (Del. Ch. May 3, 2004).   It is far from certain that a jury would have disregarded Defendants' experts' opinions.   Indeed, a jury might be swayed by defense experts seeking to establish that damages were caused by factors other than Defendants' wrongdoing, or, alternatively, trying to minimize the amount of the Company's damages.   A jury could find that there were no damages or that damages were a fraction of that asserted by Plaintiffs.   Johnson Decl. at ¶79.

In sum, while Plaintiffs believe that their claims against the Individual Defendants are strong, they also understand that hurdles such as the potential presence of a "bad faith" element, demand futility, the business judgment rule, exculpatory provisions, and conflicting damages experts make "the odds of winning [this] derivative lawsuit very small."   *Pac. Enters.,* 47 F.3d at 378.

### 2.     The Risks, Expense, Complexity, and Likely Duration of Further Litigation

Another factor militating in favor of the Settlement is the risk, expense, complexity, and likely duration of the litigation.   *Officers for Justice*, 688 F.2d at 625; *Cohn v. Nelson*, 375 F. Supp. 2d at 859.   Shareholder derivative actions are

---

[14] *See In re Lloyd's Am. Trust Fund Litig.,* 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions.   The reaction of a jury to such complex expert testimony is highly unpredictable.").

15

notoriously complicated and risky actions that involve convoluted legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *Cohn*, 375 F. Supp. 2d at 852 ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'").

These Actions were no exception. For example, significant risks would remain for Plaintiffs at every stage of the litigation, including defeating Defendants' motion to dismiss the Amended Complaint and the anticipated demurrer to the State Action, defeating Defendants' anticipated motions for summary judgment, obtaining a favorable judgment at trial, and maintaining that judgment through post-trial motions. Johnson Decl. at ¶82.

In addition to the risks inherent in proceeding, the expense and likely duration of the Actions would eventually yield diminishing returns for the Company. Discovery would be substantial and costly on all sides, likely resulting in protracted motion practice followed by a trial occupying the Court, Settling Parties, witnesses, and attorneys on both sides for a lengthy duration. *Id.* at ¶83. A prolonged period of pre-trial proceedings and a lengthy and uncertain trial would not serve the interests of the Company and its shareholders, particularly in light of the benefits provided by the Settlement. Further, even if a judgment favorable to Plaintiffs was obtained, it would likely be the subject of post-trial motions and appeal, which could prolong the Actions even further. *Id.* at ¶84. Thus, the prospect of continued protracted, expensive, and uncertain litigation strongly supports approval of the Settlement.

### 3.   The Risk of Maintaining Class Action Status Throughout the Trial

This factor is not relevant to shareholder derivative actions, and therefore is neutral to the analysis of whether the Settlement should be approved.

16

### 4.   The Amount Offered in the Settlement

Courts also consider the benefits offered by the settlement relative to the risks of continued litigation in determining the fairness, reasonableness, and adequacy of a proposed shareholder derivative settlement. *Officers for Justice,* 688 F.2d at 625; *Pac. Enters.*, 47 F.3d at 378.  Here, in contrast to the very real risks faced by continued litigation, the benefits offered by the Settlement are immediate, lasting, and substantial.  Defendants acknowledge that the Corporate Governance Reforms confer a substantial benefit upon the Company and its shareholders.  Stipulation at §2.1.  Similarly, Judge Phillips concluded that "the corporate governance reforms agreed upon here confer a substantial benefit on the Company and its shareholders, [and] constitute[s] an excellent recovery in light of the particular facts of this case."  Phillips Decl. at ¶B, 6.

The significance of these types of benefits are difficult to overstate for a public corporation like MannKind.   As courts recognize, "strong corporate governance is fundamental to the economic well-being and success of a corporation." *NVIDIA*, 2008 WL 5382544 at *3; *see also In re Pfizer Inc., S'holder Derivative Litig.,* 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (finding that corporate governance reforms "provide considerable corporate benefits to [the company] and its shareholders, in the form of a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have … caused extensive harm to the company").

### 5.   The Extent of Discovery and Stage of the Proceedings

Courts also consider the extent of discovery completed and the stage of the proceedings together as one factor in determining the fairness, reasonableness, and adequacy of the proposed Settlement. *Officers for Justice,* 688 F.2d at 625; The Ninth Circuit has noted that "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d

17

454, 459 (9th Cir. 2000) (citations omitted); *see also Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (courts "look[] not to the amount of discovery, but rather to whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settl[ement].").

Here, the Settlement was negotiated only after Plaintiffs' Counsel engaged in substantial investigation relating to Plaintiffs' factual allegations and legal claims, including: (i) reviewing MannKind's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (ii) reviewing media reports about the Company; (iii) researching the applicable law with respect to the claims alleged in the Actions and the potential defenses thereto; (iv) preparing and filing derivative complaints, including an amended complaint; (vi) conducting extensive damages analyses; (v) opposing a motion to dismiss; (vii) participating in informal, in-person conferences with Defendants' Counsel regarding the specific facts of the cases, the perceived strengths and weaknesses of the cases, and other issues in an effort to facilitate negotiations; (viii) reviewing and analyzing relevant documents in the Securities Class Action—including the motion to dismiss briefing and the Court's order denying the defendants' motion to dismiss—and evaluating the merits of, and the defendants' potential liability in connection with, the Securities Class Action; (ix) participating in a day-long mediation and several follow-up conferences; and (x) negotiating this Settlement with Defendants. Johnson Decl. at ¶89.

The accumulation of the information discovered through the above efforts permitted Plaintiffs and Plaintiffs' Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. Johnson Decl. at ¶90. Therefore, this factor also favors approval of the Settlement.

18

### 6.    The Experience and Views of Counsel

Courts have recognized that the opinion of experienced counsel who litigated the case, negotiated the compromise, and support the settlement is entitled to considerable weight. *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 52 (2008) (finding a presumption of fairness where the settlement is reached by counsel "experienced in similar litigation"); *Officers for Justice*, 688 F.2d at 625.

Here, Plaintiffs' Counsel have litigated scores of shareholder derivative actions, and they have well-known, national reputations for pursuing their cases to a successful resolution. Johnson Decl. at Ex A; Smith Decl. at Ex. A; *see also* Phillips Decl. at ¶B, 3 (opining that Plaintiffs' Counsel are "firms I count among the finest shareholder rights advocates"). As a result of their experience in these types of cases, Plaintiffs' Counsel have unique insight into the legal and factual issues presented in the Actions. In addition, Defendants are represented by Cooley LLP, a large and prestigious defense firm that has significant experience representing defendants in complex securities and derivative litigation. Johnson Decl. at ¶94; *see also* Phillips Decl. at ¶B, 3 (observing from his involvement in assisting with the Settlement, that "it was clear to me that the advocacy by both sides' lawyers was outstanding and of the highest caliber").

Drawing on this extensive expertise and experience, as well as the assistance of Judge Phillips, counsel for each of the Settling Parties have independently concluded that the Settlement confers substantial benefits upon MannKind and its shareholders and should be approved. Stipulation at §2.1; *see also* Phillips Decl. at ¶D, 1 ("While settlement approval is the province of the Court, I respectfully urge approval of all the terms of the settlement, including the agreed upon attorneys' fees and expenses."). Therefore, the Settlement is entitled to a presumption of fairness. *See Netflix*, 162 Cal. App. 4th at 52.

19

### 7.    The Presence of a Government Participant

This factor is not relevant the Actions, and therefore is neutral to the analysis of whether the Settlement is fair, reasonable, and adequate.

### 8.    The Reaction of MannKind Shareholders

"A . . . factor to consider in evaluating a proposed derivative settlement is shareholder opposition." *In re Apple Computer, Inc. Derivative Litigation*, 2008 WL 4820784 (N.D. Cal. 2008) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).   As noted earlier, pursuant to the Preliminary Approval Order, the Notice and Stipulation was filed with the SEC in a Form 8-K, as well as published on the respective websites of MannKind, Johnson & Weaver, LLP, Robbins Umeda LLP, and The Grant Law Firm PLLC.  Johnson Decl. at ¶97.

As stated in the Notice, the deadline for MannKind shareholders to object to the Settlement was October 29, 2012.  Preliminary Approval Order at p. 7. Plaintiffs have not received and are not aware of a single objection to the Settlement.  The fact that not a single shareholder has objected weighs heavily in favor of approving the Settlement.  *See In re Rambus, Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("[T]he reaction of the class to the proffered settlement … is perhaps the most significant factor to be weighed in considering adequacy."); *Maher*, 714 F.2d at 456 (finding that "minimal nature of shareholder objection" is a factor favoring approval of the settlement).

## VI.    THE NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.    Courts Favor a Negotiated Resolution of Fee Issues

The U.S. Supreme Court has encouraged a consensual resolution of attorneys' fees as the ideal toward which litigants should strive.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[A] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").  Thus, a negotiated fee is entitled to substantial weight and

20

1   deference, absent evidence of collusion.  *See Cohn*, 375 F. Supp. 2d at 861

2   ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and

3   expenses, courts give the parties' agreement substantial deference."); *see also*

4   *Pac Enter.*, 47 F.3d at 378 (Significant weight should be attributed to the parties'

5   belief that the litigation should be settled on the proposed terms, since "[p]arties

6   represented by competent counsel are better positioned than courts to produce a

7   settlement that fairly reflects each party's expected outcome in litigation.").[15]

8        Indeed, there would be little reason for parties to attempt to negotiate

9   attorneys' fees if courts were prepared, absent very strong reasons, to second-

10  guess the parties' valuation of the services performed by counsel.  This is

11  particularly so in derivative actions, where, as here, companies frequently have

12  experienced counsel to negotiate the amount of fees to be paid to counsel for

13  plaintiffs.  *See* Phillips Decl. at ¶B, 3.

14       Here, the Settling Parties, with the extensive assistance of Judge Phillips,

15  negotiated the amount of fees and expenses at arm's-length after reaching

16  agreement on the substantive terms of the Settlement.  Johnson Decl. at ¶101;

17  The Settling Parties attempted but "were unable to reach agreement on their

18  own" concerning the payment of attorneys' fees.  Phillips Decl. at ¶C, 2.

19  Recognizing this impasse, and seeking to prevent costly and expensive satellite

20  litigation, Judge Phillips issued a "mediator's proposal" that he believed

21  "reflected a fair and reasonable amount of attorneys' fees and expenses based on

22  the complexity of the Actions, the substantial risk taken by plaintiffs' counsel in

23  pursuing the case, and, most importantly, the terms and benefits of the

24  settlement."  *Id.*

25

26  [15] *See also Cazares v. Saenz*, 208 Cal. App. 3d 279, 287 (1989) ("[U]nlike the obligation of a court when fashioning a fee award, the court's task in a negotiated

27  settlement of fees is to determine if the negotiated fee is fair.").

28

1    Specifically, Judge Phillips recommended that MannKind issue 225,000

2    shares of unrestricted MannKind common stock and cause its insurers to pay

3    $800,000 for Plaintiffs' Counsel's fees and litigation expenses. *Id.*; Johnson

4    Decl. at ¶101.  After "several days of deliberation," all parties accepted Judge

5    Phillips' proposal.  Phillips Decl. at ¶C, 3.

6    The Settling Parties agreed to Judge Phillips' proposed Fee and Expense

7    Amount only after they had considered, *inter alia*, the Settling Parties' respective

8    valuations of the benefits conferred upon MannKind as a result of the Actions

9    and Settlement, the attorney fee provisions approved by courts in similar

10   shareholder derivative action settlements, and the amount which would fairly

11   compensate Plaintiffs' Counsel for both the risk they undertook in commencing

12   the Actions, and the results they produced in prosecuting and settling the

13   Actions.  Johnson Decl. at ¶¶90, 102; Phillips Decl. at ¶¶C, 1-2.  The end result

14   of these negotiations is a market-driven, arm's-length, Fee and Expense Amount

15   that should be approved.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70

16   (7th Cir. 1992) (noting that market factors, best known by the negotiating parties

17   themselves, should determine the quantum of attorneys' fees).

18          **B.    The Substantial Benefits Conferred Upon MannKind Support
                    the Fee and Expense Amount**

19
20   Plaintiffs' Counsel are entitled to be compensated for their efforts on

21   behalf of MannKind and its shareholders in this derivative action.  As described

22   above, the Settlement consideration consists of corporate governance reforms

23   designed to provide substantial, immediate, and long lasting benefits to

24   MannKind and its shareholders.  Courts around the country, including the U.S.

25   Supreme Court, have long recognized that settlements of derivative actions based

26   on non-monetary corporate therapeutics, such as material changes in corporate

27   management or policies, provide substantial benefits and warrant approval.  *See,*

28   *e.g., Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 397-98 (1970); *NVIDIA*, 2008

22

1   WL 5382544 at *3 ("[S]trong corporate governance is fundamental to the
2   economic well-being and success of a corporation."); *Cohn*, 375 F. Supp. 2d at
3   853 ("[C]ourts have recognized that corporate governance reforms such as those
4   achieved here provide valuable benefits to public companies.").

5       This is especially true where, as here, "the great benefit conferred upon
6   [the company] as a result of the new corporate governance principles provided
7   for in the settlement agreement will serve to prevent and protect [the company]
8   from the reoccurrence of certain alleged wrongdoings." *Unite Nat'l Ret. Fund v.*
9   *Watts*, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (finding settlement "fair,
10  adequate, reasonable and proper, and in the best interests of ... shareholders");
11  *see also In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412,
12  2008 WL 185809, at *3-4 (D.N.J. Jan. 14, 2008) (finding that improvements to
13  company's corporate governance structure and oversight functions conferred
14  "substantial benefits" to the company).

15      When substantial benefits are conferred through a shareholder derivative
16  suit, courts recognize that plaintiffs' counsel are entitled to compensation for
17  their efforts on behalf of the company and its shareholders. *See Mills*, 396 U.S.
18  at 395 (observing that a corporation receiving a substantial benefit may "justify[]
19  an award of counsel fees"); *Cohn*, 375 F. Supp. 2d at 866 ("This Court believes
20  that because of the complexity and societal importance of stockholder and
21  derivative litigation, the most able counsel should be obtained. The attorney's
22  fees awarded should reflect this goal.").

23      Here, Defendants acknowledge that MannKind has received substantial
24  benefits in connection with the Company's agreement to implement valuable
25  corporate governance reforms and maintain these reforms for four years.
26  Stipulation at §2.1; *see also* Phillips Decl. at ¶B, 6 ("Based on . . . experience in
27  assisting the negotiation of corporate governance-based settlements in many

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT

Lead Case No. 11-cv-05003-GAF-SSx

other shareholder derivative actions . . . the corporate governance reforms agreed upon here confer a substantial benefit on the Company and its shareholders, constitute an excellent recovery in light of the particular facts of this case, and represent a fair and reasonable settlement for all parties.").

Moreover, these substantial benefits were conferred upon MannKind *solely* because of the efforts of Plaintiffs and Plaintiffs' Counsel. Defendants acknowledge that Plaintiffs' prosecution and settlement of the Actions was the sole factor in their decision to enact the Corporate Governance Reforms. Stipulation at §2.1. In short, these substantial benefits to MannKind and its shareholders, and Plaintiffs' Counsel's singular role in securing them, strongly support approval of the agreed upon Fee and Expense Amount.

### C. The Fee and Expense Amount Compares Favorably to Fees in Settlements of Similar Actions

A review of the attorneys' fees provisions approved in similar derivative litigation settlements also weighs in favor of approval here. As they were negotiating the Fee and Expense Amount, counsel for the Settling Parties were well-aware of the comparable fees that had been awarded in similar litigation. Johnson Decl. at ¶106. The Fee and Expense Amount is well within the range of reasonableness when compared with other negotiated fees approved in similar complex derivative cases involving a settlement centered around beneficial corporate governance reforms.[16]

---

[16] *See, e.g.*, *Travis v. Mittelstaedt,* No. 2:06-cv-02341, slip op. (E.D. Cal. July 16, 2009) (approving $3 million in fees and expenses for corporate governance reforms) (Johnson Decl. at Ex. C); *In re Sequenom, Inc. Derivative Litig.*, Case No. 09-CV-1404-LAB-WMC, slip op. (S.D. Cal. Jul. 27, 2010) (approving $2.5 million in attorneys' fees and expenses for corporate governance reforms) (Johnson Decl. at Ex. D); *In re Wireless Facilities, Inc. Derivative Litig.*, Case No. 04-CV-1663-JAH-NLS, slip op. (S.D. Cal. Mar. 30, 2010) (approving $2 million in attorneys' fees and expenses for corporate governance reforms)

24

## VII.   THE INCENTIVE AWARDS SHOULD BE APPROVED

Plaintiffs' Counsel also seek permission to allocate from the Fee and Expense Amount a payment of 1,000 shares of unrestricted MannKind common stock for each of the Plaintiffs (the "Incentive Award").   The Settling Parties have agreed that such a request is appropriate and Stipulation at §4.6.

Federal courts routinely approve "incentive" awards to named plaintiffs in representative shareholder actions in recognition of the equitable principle that a plaintiff who acts for others should be rewarded for his or her efforts.   *See, e.g.*, *Denney v. Jenkens & Gilchrist*, 2005 WL 388562, at *321 (S.D.N.Y. Feb. 18, 2005) (approving award based on common law recognition of the important policy role plaintiffs play in representative actions); *In re Dun & Broadstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding class representatives awards ranging from $35,000 to $55,000); *In re GNC S'holder Litig.*, 668 F.Supp. 450, 451 (W.D. Pa. 1987) ("We shall approve such incentive awards to recognize efforts by the named plaintiffs . . .").

Here, each of the Plaintiffs has personally participated in the litigation of and monitoring of events in the Actions.   *See* Talley Decl. at ¶¶4-5; Gaines Decl. at ¶¶4-5; Stephens Decl. at ¶¶5-7.   The Incentive Award for this work is clearly modest.   Thus, and as an equitable matter, this Court should approve the Incentive Awards in recognition of the substantial benefits these Plaintiffs helped to confer upon MannKind and its shareholders.

## VIII.  CONCLUSION

For the reasons set forth above, Federal Plaintiff respectfully requests that the Settlement be finally approved by the Court and that the Court enter the proposed Final Order and Judgment submitted concurrently herewith.

---

(Johnson Decl. at Ex. E); *In re THQ, Inc. Derivative Litig.*, No. BC357600, slip op. (Cal. Super. Ct. Feb. 25, 2009) (approving $1.25 million in attorneys' fees and expenses for corporate governance reforms) (Johnson Decl. at Ex. F).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: November 5, 2012          JOHNSON & WEAVER, LLP


By:  */s/ Frank J. Johnson*
FRANK J. JOHNSON
SHAWN E. FIELDS

*Lead Counsel for Plaintiff*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S                    Lead Case No. 11-cv-05003-GAF-SSx
UNOPPOSED MOTION FOR FINAL APPROVAL OF
SETTLEMENT